IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES DUKES, | No. 1:20-CV-00315 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| LIEUTENANT MOHL, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

MAY 25, 2022

Plaintiff James Dukes filed this *pro se* Section 1983[1] action, asserting Eighth Amendment and ADA claims against six prison officials at the State Correctional Institution in Frackville, Pennsylvania (SCI Frackville). Presently pending is Defendants' motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court will grant in part and deny in part Defendants' Rule 56 motion. The Court will also dismiss with prejudice Dukes' ADA claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I.     **FACTUAL BACKGROUND**[2]

The facts underlying the claims in this case are largely undisputed. At all relevant times, Dukes was incarcerated at SCI Frackville and housed in the Restricted Housing Unit (RHU).[3] Dukes suffers from permanent paralysis of his right arm, and therefore is required to occupy the bottom bunk in cells with bunked bedframes.[4] On December 13, 2019, Dukes was moved from cell EB12 to cell EB5 by defendants Correctional Officer Christopher Lyons and Correctional Officer Gino Tedesco.[5] Dukes alleges that Lyons and Tedesco informed him that the cell transfer was ordered by defendants Lieutenant Brian Mohl and Sergeant David Kraynack.[6]

---

[2]   Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Defendants filed their statement of material facts, Doc. 92, but instead of responding to that statement, Dukes filed his own independent statement of material facts, *see* Doc. 94. Dukes' filing is not permitted by Local Rule 56.1. *See Barber v. Subway*, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015) (explaining that separate, nonresponsive statement of facts by nonmovant is "neither contemplated nor permitted by the Local Rules"). Accordingly, Defendants' statement of material facts, Doc. 92, will be considered admitted unless plainly contradicted by the record. *See* LOCAL RULE OF COURT 56.1.
[3]   Doc. 38 ¶¶ 7-21; Doc. 92 ¶ 7.
[4]   Doc. 38 ¶ 11; Doc. 94-2 at 3; Doc. 92 ¶ 12(2). Defendants' statement of material facts erroneously contains two paragraphs numbered "11" and two paragraphs numbered "12." The Court will refer to the first set of paragraphs as "11(1)" and "12(1)" and the second set of paragraphs as "11(2)" and "12(2)."
[5]   Doc. 38 ¶¶ 8-9; Doc. 92 ¶ 12(1).
[6]   Doc. 38 ¶ 8.

When Dukes, Lyons, and Tedesco arrived at cell EB5, another inmate was already occupying the bottom bunk.[7] Dukes informed Lyons and Tedesco multiple times that, due to his right-arm paralysis, he was "bottom bunk status" and thus was required to be on the lower bunk.[8] Dukes claims that Lyons and Tedesco ignored his protestations, placed his mattress on the top bunk anyway, and left.[9] Dukes further attests that, later that day, he spoke with Mohl during RHU security rounds, showed him his paralyzed right arm, and informed him that he was supposed to be on the bottom bunk.[10] Dukes claims that Mohl responded, "I don't know what to tell you, talk to Kraynack."[11] When Kraynack came to Dukes' cell a short time later, Dukes avers that after he showed Kraynack his paralyzed arm and advised him that both he and his cellmate were bottom-bunk status, Kraynack responded, "We don't have any room, you're stuck."[12]

Two days later, on December 15, 2019, Dukes fell out of the top bunk when attempting to get down to receive his medication from the nurse.[13] He fell "approximately [] five feet" to the concrete floor and struck his head.[14] Dukes was seen by medical and sent to an outside hospital for a CT scan, and then placed in

---

[7] Doc. 92 ¶ 11(2).
[8] *Id.* ¶ 12(2); *see also* Doc. 94-7 at 2, 6, 7.
[9] Doc. 38 ¶ 12; Doc. 92 ¶ 12(2).
[10] Doc. 38 ¶ 13; Doc. 94-7 at 3.
[11] Doc. 38 ¶ 13.
[12] *Id.* ¶ 15.
[13] *Id.* ¶ 17; Doc. 92 ¶ 13.
[14] Doc. 38 ¶ 18; Doc. 92 ¶ 13.

the SCI Dallas infirmary for a day.[15]  Dukes recalls that, after being released from the SCI Dallas infirmary and transferred back to SCI Frackville, he was moved to a different cell and had to sleep with his mattress on the floor until he could be transferred to a cell with an available bottom bunk.[16]

Dukes filed suit in February 2020, alleging Eighth Amendment violations for being deliberately placed on a top bunk despite prison officials' knowledge of his disability and bottom-bunk status.[17]  In his initial and first amended complaint, Dukes named as defendants Mohl, Kraynack, Lyons, and Tedesco.[18]  Dukes' first amended complaint also added a claim invoking the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*.[19]

Dukes then filed a second amended complaint, which names two additional SCI Frackville prison-official defendants: Correctional Officer Testen and Captain Albert.[20]  Dukes alleges that Testen was the officer responsible for "filling out and completing" all RHU paperwork, including cell moves and bed assignments, on

---

[15] Doc. 38 ¶ 21; Doc. 92 ¶¶ 14-15; Doc. 91-1, 10/7/2020 Dukes Deposition 21:17-24 [hereinafter "Dukes Dep."].
[16] Doc. 38 ¶ 21; Dukes Dep. 21:23-22:17.
[17] Doc. 1 at 10.
[18] Doc. 1 at 3-4, 7-8; Doc. 38 ¶¶ 2-6.  The initial complaint also named a "Sergeant Walter," (*see* Doc. 1 at 3, 7), but Walter was later dismissed because he was not named in the first amended complaint, (*see* Doc. 43 at 3).  The first amended complaint added a "John Doe" defendant, but that unidentified defendant was later determined to be Correctional Officer Testen, who was named as a defendant in the second amended complaint.  *See* Doc. 77 ¶ 2.
[19] Doc. 38 ¶ 24.
[20] Doc. 77 ¶¶ 2-3.

4

December 13.[21]  As to Albert, Dukes avers that he was the shift commander on December 13, was in charge of the officers in the RHU, "was aware of all cell moves and bunk assignments that took place" in the RHU that day, and was the recipient of all RHU paperwork completed for Dukes' cell transfer.[22]

Defendants move for summary judgment on all counts except Dukes' Eighth Amendment claims against Lyons and Tedesco.[23]  Their Rule 56 motion is fully briefed and ripe for disposition.

## II.  STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[24]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[26]

---

[21] *Id.* ¶¶ 4-6.
[22] *Id.* ¶¶ 7-10.
[23] Doc. 90.
[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[25] FED. R. CIV. P. 56(a).
[26] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (*quoting Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[27] The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[28] This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[29] A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[30] Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[31]

## III. DISCUSSION

Defendants argue that Dukes' pleading errors and lack of supporting evidence require dismissal of most Defendants. They also claim that sovereign immunity bars Dukes' official capacity claims. The Court will address these arguments and independently review Dukes' ADA claims.

---

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[28] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).
[29] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).
[30] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[31] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

A. **First and Second Amended Complaints**

Defendants point out that, when Dukes filed his second amended complaint, it appears as though he was attempting to build on or implicitly incorporate his first amended complaint. Dukes, for example, does not reassert the majority of the allegations he pled in his original and first amended complaints regarding the purported conduct of Mohl, Kraynack, Lyons, and Tedesco.[32] Defendants contend that, since Dukes' second amended complaint omits these pertinent allegations and does not expressly incorporate or adopt any of his prior pleadings, Dukes has failed to assert personal involvement as to Mohl and Kraynack. Defendants likewise argue that the allegations in the second amended complaint against Testen and Albert sound only in *respondeat superior*, lack the requisite personal involvement for Section 1983 liability, and therefore must be "dismissed."[33]

The Court declines to penalize Dukes, who is acting *pro se*, at summary judgment for a technical pleading error that Defendants could have raised earlier. It is true that Dukes should have fully restated his allegations or expressly incorporated or adopted his first amended complaint when he filed his second amended complaint.[34] However, from the outset of this case it has been obvious

---

[32] *Compare* Doc. 77 ¶¶ 4-10, *with* Doc. 38 ¶¶ 7-21 *and* Doc. 1 at 8-9.
[33] Doc. 91 at 11.
[34] *See W. Run Student Housing Assoc., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) ("[T]he amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'" (alteration

that Dukes is asserting Eighth Amendment claims against Mohl, Kraynack, Lyons, and Tedesco. Dukes also references these Defendants in his second amended complaint, albeit without many of the underlying factual assertions contained in earlier pleadings.[35] Because *pro se* litigants are held to less exacting pleading standards than counseled parties,[36] the Court will not fault Dukes for his procedural error. Instead, the Court will analyze whether Dukes has carried his summary judgment burden to point to evidence that creates a genuine dispute of material fact regarding his Eighth Amendment claims against Mohl, Kraynack, Testen, and Albert.

### B. Eighth Amendment Deliberate Indifference

Dukes maintains that Defendants were deliberately indifferent to his health and safety and failed to protect him from obvious harm, thus violating his Eighth Amendment rights. To establish an Eighth Amendment failure-to-protect claim against a prison official, the inmate must show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm."[37] In this

---

in original) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996))).
[35] *See* Doc. 77 ¶¶ 5, 11.
[36] *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).
[37] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[38] Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence."[39]

Defendants do not challenge any element except the second: deliberate indifference by Defendants to a substantial risk to Dukes' health and safety. In other words, they do not dispute Dukes' assertion that his top-bunk placement posed a substantial risk of serious harm or that prison officials' deliberate indifference caused Dukes' harm. Rather, Defendants argue that Dukes cannot establish personal involvement or deliberate indifference by Mohl, Kraynack, Testen, or Albert.

The Court finds that, upon review of the record, Dukes has carried his burden with respect to Mohl, Kraynack, and Testen, but not as to Albert. During his deposition, Dukes testified that he spoke directly to Mohl on December 13 during RHU rounds, informing him that he was bottom-bunk status and also needed his arm brace for his disability.[40] A short time later, Kraynack brought Dukes' arm brace to his new cell and Dukes attests that he informed Kraynack at

---

[38] *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).
[39] *Id.* (quoting *Farmer*, 511 U.S. at 842).
[40] Dukes Dep. 16:17-17:8, 18:23-25.

9

that time that he was bottom-bunk status.[41]  Dukes further testified that these officers were familiar with him and his right arm paralysis because he had been housed in the RHU a month prior.[42]  According to Dukes, neither officer took any action in response to his requests to be placed on a bottom bunk due to his disability.

Testen admits that he was responsible for completing Dukes' cell transfer and bunk assignment paperwork and for assigning Dukes to a top bunk on December 13.[43]  Testen maintains, however, that he reviewed "DOCNet" and "medical" and those inmate-information sources did not indicate that Dukes was bottom-bunk status.[44]  Dukes counters Testen's assertions by providing copies of his "Medical Housing Recommendations" from DOCNet, which clearly indicate that Dukes was "lower bunk" status since 2009.[45]  Accordingly, there is a genuine dispute of material fact as to whether Testen actually reviewed the information sources he claims he did, or whether he knew that Dukes was bottom-bunk status but assigned him to a top bunk anyway.  The Court further observes that, in response to Dukes' third request for admissions, Kraynack broadly admitted, "Everyone was aware of [Dukes'] bottom bunk status and assignment[.]"[46]  The

---

[41] *Id.* at 17:1-18:4, 19:1-3.
[42] *Id.* at 19:5-13.
[43] *See* Doc. 94-1 at 3.
[44] *See id.*
[45] *See* Doc. 94-2 at 3.
[46] Doc. 94-5 at 3.

Court thus cannot find as a matter of law that Testen did not exhibit deliberate indifference to Dukes' disability and the risk of harm a top-bunk assignment may create.

Dukes does not provide any evidence to support his claim against Albert. In fact, Albert is not even mentioned in the argument section of Dukes' brief in opposition to summary judgment.[47] Even if Dukes could rely on the allegations in his second amended complaint, which he cannot do at summary judgment,[48] those allegations sound in vicarious liability and do not establish personal involvement by Albert in the alleged Eighth Amendment violation.[49] The Court therefore must grant judgment in Albert's favor on Dukes' Eighth Amendment claim.

### C.   Official Capacity Claims

Dukes sued all six Defendants in their "official and individual capacities."[50] The official capacity claims, however, are barred by Eleventh Amendment sovereign immunity. The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or

---

[47] *See* Doc. 94 at 6-10.  Albert is referenced only twice in conclusory fashion at the opening of the brief. *See id.* at 1.
[48] *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018).
[49] *See id.* at 289-90 (explaining that vicarious liability is inapplicable to Section 1983 claims and that plaintiff must establish that defendant—through his own individual actions—violated plaintiff's constitutional rights).
[50] Doc. 38 ¶¶ 2-6; Doc. 77 ¶¶ 2-3.

citizens of foreign states—brought against a state.[51] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[52] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[53] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[54]

Dukes does not address this issue in his response to Defendants' motion for summary judgment. His pleadings, moreover, do not demonstrate that he is seeking prospective injunctive or declaratory relief.[55] Therefore, Dukes' official capacity claims are barred by sovereign immunity and judgment as a matter of law must be entered in Defendants' favor on these claims.

---

[51] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).
[52] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).
[53] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).
[54] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).
[55] Dukes seeks a declaratory judgment that his civil rights were violated, (*see* Doc. 38 ¶ 25; Doc. 77 ¶ 12), but that is a form of retrospective—not prospective—declaratory relief.

### D. Americans with Disabilities Act Claim

Defendants do not mention Dukes' ADA claim, likely because it was not realleged in his second amended complaint. In his first amended complaint, Dukes attempts to assert personal civil liability against Defendants for alleged violations of Title II of the ADA.[56] But whether Dukes is attempting to sue the individual Defendants under the ADA or for ADA violations through Section 1983, such litigation tactics are foreclosed as a matter of law. Title II of the ADA protects against discrimination by a "public entity," not individuals.[57] Although the United States Court of Appeals for the Third Circuit has not directly answered the question of whether there can be individual liability under Title II of the ADA,[58] nearly all its decisions regarding personal liability under the ADA's various titles point toward the absence of individual liability.[59] Additionally, other circuit courts

---

[56] Dukes does not specify in his first amended complaint which title of the ADA he is asserting, but he confirms in his briefing that he is attempting to bring claims under Title II of the ADA. *See* Doc. 94 at 9.

[57] *See* 42 U.S.C § 12132.

[58] *See Brown v. Deparlos*, 492 F. App'x 211, 215 n.2 (3d Cir. 2012) (nonprecedential) ("This Court has yet to address individual liability under Title II of the ADA[.]").

[59] *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (nonprecedential) (finding that plaintiff's claims "for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability"); *see also Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 299 & n.27 (3d Cir. 2017) (holding that Title VII and ADA claims cannot be brought through a "back door to the federal courthouse" via 42 U.S.C. § 1983, and noting that Title VII and ADA claims are intended to impose liability on employers, not individuals); *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir. 2006) (noting in dicta that "neither the ADA nor 12 U.S.C. § 1831j permit individual damages liability on the part of employees"); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting in dicta that "there appears to be no individual liability for damages under Title I of the ADA"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (finding that individual defendants

of appeals have directly addressed the issue and found no individual liability under Title II.[60] Dukes has provided no basis in law or reason to hold otherwise. Consequently, the Court finds that Dukes' ADA claims must be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' motion (Doc. 90) for partial summary judgment. The Court will also dismiss with prejudice Dukes' ADA claims. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

did not own, lease, or operate Thiel College and thus were "not subject to individual liability under Title III of the ADA"); *Boggi v. Med. Review & Accrediting Council*, 415 F. App'x 411, 414-15 (3d Cir. 2011) (nonprecedential) (agreeing that plaintiff failed to state ADA claim against any non-entity defendants sued in their individual capacity) (citing *Koslow*, 302 F.3d at 178; *Emerson*, 296 F.3d at 189); *N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010) (nonprecedential) (noting individual defendant could not be held liable under ADA) (citing *Koslow*, 302 F.3d at 178); *Wardlaw v. Phila. Street's Dep't*, 378 F. App'x 222, 225 (3d Cir. 2010) (nonprecedential) (explaining that plaintiff's ADA claims "were not actionable against the individual defendants") (citing *Koslow*, 302 F.3d at 178).

[60] *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (*en banc*).